ORTH, APPELLEE, *v.* LAUTHER ET AL., APPELLANTS.

(No. 7773—Decided October 19, 1953.)

*Mr. Hawley Todd* and *Mr. Charles A. Brigham, Jr.,* for appellee.

*Messrs. Cowell & Fletcher* and *Mr. Lee J. Hereth,* for appellants.

MATTHEWS, P. J. This is an appeal on questions of law from a judgment for the plaintiff in an action to recover a commission under a written contract of employment of the plaintiff by the defendants as their agent to effect a sale of certain real estate owned by them.

In making their contract, the parties used a form prepared by The Cincinnati Real Estate Board, in which is found the following printed provision:

"In consideration of your efforts to procure a purchaser I/we agree to pay you the rate of commission as established by The Cincinnati Real Estate Board."

On the reverse side, there is this printed endorsement: "Rates of commission adopted by The Cincinnati Real Estate Board—Private sales—Improved property 5%."

It was proven at the trial that The Cincinnati Real

Estate Board was composed of about 700 real estate agents, duly licensed by the state of Ohio, of which the plaintiff was one; that The Cincinnati Real Estate Board was affiliated with The Ohio Real Estate Board and The National Association of Real Estate Boards; that they had identical constitutions, bylaws, and codes of ethics; and that all three fixed standard rates of commissions and required their members to agree to adhere to the rates thus established.

The defendants, appellants herein, made this prologue to their argument on the law:

"The sole question to be decided on this appeal is whether a contract for real estate broker's commission shown by adherence to a schedule of standard rates of commission fixing the uniform or minimum rates is illegal in Ohio as being violative of the Sherman Antitrust Act or of the Ohio Valentine Anti-trust Law."

It is thus seen that the defendants concede that the plaintiff is entitled to the commission according to the express terms of the contract. The issue is, therefore, reduced to the single question as to the validity of the contract and particularly the validity of the terms fixing the rate of commissions. The defendants challenge their validity. It is argued that The Cincinnati Real Estate Board, The Ohio Real Estate Board, and The National Association of Real Estate Boards, separately and collectively are combinations in restraint of trade; and that it has been so decided as to the last named organization in the case of *United States* v. *National Association of Real Estate Boards,* 339 U. S., 485, 94 L. Ed., 1007, 70 S. Ct., 711.

It is not claimed that the defendants were subjected to duress or that undue influence was exerted. It is conceded that they signed the contract of their own free will. It is not claimed that they were parties to any combination in restraint of trade, unless it can be said that their adherence to this contract would have

that effect. It is defendants' contention that the plaintiff's adherence to the terms of The Cincinnati Real Estate Board, a contract to which defendants are not parties, renders the contract with them illegal and unenforceable. In other words, they assert that their contract with the plaintiff is infected with the illegality of the contract the plaintiff has with the other members of The Cincinnati Real Estate Board.

If we should assume that The Cincinnati Real Estate Board, composed of brokers, is a combination in restraint of trade, still we find no basis for holding it to be violative of the Sherman Anti-trust Act. There is no showing that any of its activities other than its affiliation with The National Association of Real Estate Boards transcends state boundaries. And this transaction between the plaintiff and defendants is entirely intrastate. The real estate is located in Ohio, the contract was made and to be performed in Ohio, and was between citizens and residents of Ohio. Certainly, there is no basis for any claim that it is either interstate commerce or that it affects interstate commerce.

If The Cincinnati Real Estate Board is to be denounced as a combination in restraint of trade, it must be because it violates rules of the common law or the terms of the Ohio Valentine Anti-trust Act. Section 6390 *et seq.*, General Code.

Counsel rely on *United States* v. *National Association of Real Estate Boards, supra,* in support of their position, but that case simply holds that the contract between the members of the association violated the Sherman Anti-trust Act. It does not involve a contract between a member and a nonmember for a commission for making a sale.

Counsel also rely on *List* v. *Burley Tobacco Growers' Co-operative Assn.,* 114 Ohio St., 361, 151 N. E., 471. That case, likewise, involves a contract between members of an association and not a contract between

a member and a nonmember. While the Valentine Anti-trust Act was relied on to invalidate the contract, the court held that as the association was operating in accordance with the terms of a special statute, it could not be said to be an unlawful combination. In other words, the provisions of a special statute prevailed over a general statute.

It is apparent that *List* v. *Burley Tobacco Growers' Co-operative Assn.* has no application to the facts of this case.

Nor does *Continental Wall Paper Co.* v. *Voight & Sons Co.*, 212 U. S., 227, 53 L. Ed., 486, 29 S. Ct., 280. The action there was to recover for wallpaper sold, it is true, to a nonmember, but the contract between the nonmember and the combination contained illegal provisions, that is, the nonmember agreed to join the combination in maintaining prices. It was that illegal provision in the contract of purchase that precluded the plaintiff from recovery. This is shown by the fact that the court expressly approved *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S., 540, 46 L. Ed., 679, 22 S. Ct., 431, saying, at page 260:

"The present case is plainly distinguishable from the *Connolly case*. In that case the defendant, who sought to avoid payment for the goods purchased by him under contract, had no connection with the general business or operations of the alleged illegal corporation that sold the goods. He had nothing whatever to do with the formation of that corporation, and could not participate in the profits of its business. *His* contract was to take certain goods at an agreed price, nothing more, and was not in itself illegal, *nor part of nor in execution of any general plan or scheme that the law condemned.* The contract of purchase was wholly collateral to and independent of the agreement under which the combination had been previously formed by others in Ohio. It was the case simply of a

corporation that dealt with an entire stranger to its management and operations and sold goods that it owned to one who wished to buy them.''

That could be said with equal propriety about the contract between the plaintiff and defendants in this case.

There are many cases making this distinction between an action to enforce the contract between the members of the combination and a contract itself containing no illegal provisions by a member with a non-member.

In *Jackson* v. *Akron Brick Assn.*, 53 Ohio St., 303, 41 N. E., 257, 53 Am. St. Rep., 638, 35 L. R. A., 287, the brick association sought to recover for bricks sold and delivered. Two defenses were alleged, one that the plaintiff was not a juristic person, but nothing more than a name used to designate a monopolistic association of brick manufacturers, maintaining a central office or agency through which all purchases of brick had to be made, and through which all sales of brick were made, and that the purpose was to control the price of brick and to stifle competition, contrary to sound public policy. The trial court submitted the issues to the jury, which found for the plaintiff. The Supreme Court reversed the judgment and remanded the cause for further proceedings on the ground that the plaintiff had no legal capacity to sue. However, the court, at page 304, took occasion to approve the following portion of the trial court's charge to the jury as an abstract statement of the law:

'' 'In our jurisprudence it is no defense to say that the contract was made with a bad man, or with persons engaged in prosecuting acts contrary to law, or the policy of the state, unless the contract grows immediately out of and in connection with an illegal or immoral act. A clear distinction exists in law, as well as ethics, between a contract entered into to do an un-

lawful or immoral act, or to promote a course of conduct contrary to the policy of the state, and a contract entered into for a legitimate purpose, though made with persons who commit unlawful and immoral acts or promote schemes contrary to good policy.' "

We are of the opinion that the correct rule to govern this case is stated in 36 American Jurisprudence, 656, Section 198, and is as follows:

"It is well settled at common law that the contracts of an unlawful combination or its members which are collateral to and independent of the unlawful contract by which the trust or monopoly was created and which are not in furtherance of its unlawful purpose, are valid and enforceable. It is generally agreed that the mere fact that the plaintiff is a member of a trust or combination, created with the intent and purposes of restraining trade or establishing a monopoly, will not disable or prevent it in law from selling goods or services within or affected by the provisions of such trust or combination, and recovering their price or value, either at common law or under statutes making unlawful contracts in restraint of trade or commerce."

See, also, 58 Corpus Juris Secundum, 1109, Section 92.

Defendants' counsel seek to draw a distinction between an action for the contract price based on a schedule promulgated by the unlawful combination and an action for the reasonable value of the services. They argue that reference to the schedule prevents the contract from being collateral to or independent of the contract in restraint of trade among the members of The Cincinnati Real Estate Board. We find no such distinction made in the cases. While the contract rate was taken from the established schedule, the defendants were under no compulsion to agree. We repeat that no duress or undue influence is charged. The defendants agreed of their own free will. In doing so,

they were contracting for the plaintiff's services as a licensed real estate broker, and not contracting to promote the stifling of competition.

Furthermore, the defendants having voluntarily agreed to the rate of compensation must be taken to have admitted its reasonableness. There is no evidence in the record to contradict that admission. If necessary to support the judgment of the trial court, we would be required to hold that the defendants' agreement to the rate was sufficient evidence to uphold the trial court's finding that the services were reasonably worth that amount.

For these reasons, the judgment is affirmed.

*Judgment affirmed.*

Ross and Hildebrant, JJ., concur.